UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDSEY R. TOFSRUD, a single person,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHN E. POTTER, as Postmaster General of the United States Postal Service, a federal governmental entity; and DAVID KENNEDY and JANE DOE KENNEDY, individually and as a marital community; and the UNITED STATE OF AMERICA;<br><br>    Defendants. | NO. CV-10-090-JLQ<br><br>**MEMORANDUM OPINION and ORDER DENYING MOTION TO VACATE ORDER OF SUBSTITUTION** |

**BEFORE THE COURT** is Defendants' Motion to Vacate the Order of Substitution of the United States and for Reinstatement of Defendant Kennedy (ECF No. 14). Upon review, the court **DENIES** the motion.

**I.    INTRODUCTION**

The background and procedural history of this case, as well as a discussion of the relevant legal authority, was set forth in the court's October 5, 2010 Order Granting Motion for Reconsideration (ECF No. 45). The court incorporates those recitations herein by reference, and supplements them herein as necessary. The October 5, 2010 Order accorded Plaintiff an additional opportunity to oppose the United States' prior substitution as a party in lieu of Defendant Kennedy. Plaintiff's common law assault and battery claim against Defendant Kennedy arising from his alleged threats and striking the Plaintiff's chin can proceed only if the U.S. Attorney's scope of certification is successfully refuted because the U.S. has not waived sovereign immunity with regard to

ORDER - 1

such torts. The Plaintiff's motion pending before the court now challenges the certification and requests the court to reconsider and vacate its prior Order of Substitution.

**II.   ANALYSIS**

Plaintiff's motion presents the court with a single question: Was Defendant Kennedy acting within the scope of employment when the alleged assault and battery occurred on October 22, 2008? As set forth in the court's October 5, 2010 Order, the United States' certification is prima facie evidence that the conduct of the federal employee was in the scope of his or her employment, and is conclusive unless challenged. *Billings v. U.S.*, 57 F.3d 797, 800 (9th Cir. 1995); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993).  The party challenging certification bears the burden of presenting evidence and disproving the U.S. Attorney's certification by a preponderance of the evidence. *Id.*

State law governs the scope-of-employment inquiry under the Westfall Act, 28 U.S.C. § 2679. *See McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001). Under Washington law, the test for determining whether an employee is acting in the scope of his employment is "whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer." *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wash.2d 569, 573, 320 P.2d 311 (1958). The commission of an intentional tort or acts that are contrary to employer instructions or policy are not necessarily outside the scope of employment.  *Dickinson v. Edwards*, 105 Wash.2d 457, 716 P.2d 814, 819 (1986).  Restatement of Agency, Second, § 231, explains in the comments:

> The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants **may commit minor crimes** in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.

ORDER - 2

A chauffeur, driving on an errand for his master, who knowingly drives on the left-hand side of the street or exceeds the speed limit, is still acting within the scope of employment. Likewise, a gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the same purpose, it would be difficult to find the act within the scope of employment. So, if a servant is directed to use any lawful means to overcome competition, the bribery of employees of the competitor, or the circulation of malicious stories, might be found to be within the scope of employment, while the murder of the competitor, although actuated solely by zeal for the master, would not be.

"[T]he proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Robel v. Roundup Corp*., 148 Wash.2d 35, 54 (Wash. 2002). An employee's conduct is outside the scope of employment if it "is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (citing Rest. (2d) of Agency § 228(2)(1958).

This is not a case wherein the Attorney General's certification rests on facts that differ from Plaintiff's allegations, or on a denial that the conduct alleged to be beyond the scope of employment in fact occurred. The facts are largely uncontested. On the date of the alleged assault and battery, October 22, 2008, Tofsrud and Kennedy were working side by side at a "flat sorter" performing their jobs at the U.S. Post Office's Spokane, Washington Processing and Distribution Center. Tofsrud was worked as a "casual clerk," while Kennedy had a full-time position as a clerk. He was also designated as a "Safety Captain" (making sure employees are working in a safe manner) and a supervisor, and had at times supervised Tofsrud. It is undisputed that on October 22, 2008, Kennedy was not working in his supervisory capacity.

During their shift together, Tofsrud informed Kennedy she wanted to leave work early and Kennedy advised her to speak with the acting supervisor that day. ECF No. 61 at 16 [Kennedy Decl. ¶ 9]. On multiple occasions during their shift that day, Kennedy made gestures with his fist toward Tofsrud, pretending as though he was going to strike her. Plaintiff provides no evidence regarding the context of these gestures, nor does Plaintiff provide any evidence that Kennedy acted for purely personal reasons. Rather,

ORDER - 3

the context of these gestures is provided in Defendant Kennedy's declaration which states that he made the gestures while "reminding her to get back to work when she was playing with her cell phone and not working." ECF No. 61 at 4.

At one point during the shift, Kennedy made physical contact with Plaintiff's face using his hand. Plaintiff's declaration states that when Kennedy "came back" (presumably returning to the flat sorter), she turned on her MP3 device and recorded their conversation. The transcript of the recording reads as follows:

> Pltf: "Yea - you act like you were gonna hit me like 10 times today"
> Def.: "No-nine"
> Pltf.: "Huh?"
> Def.: "9"
> Pltf.: "9 (?Pause) Whatever!"
> Pltf.: "When you supervise -"
> Def.: "That's a real hit, I didn't want [ ?] without hitting you."
> Pltf: "oh now you actually hit me, thanks, when you supervise you let Dave throw tubs at me and when you work with me you hit me"
> Def.: You said I did so I thought I'd make up for it
> Pltf: Yea, thanks

ECF No. 61 at 34. Tofsrud testified at her deposition that after this occurred she "didn't run to the bathroom," but rather she "continued working." ECF No. 61 at 31. Tofsrud further testified she did not remember which side of her face was struck, that she was not sure whether Kennedy's hand was open or closed; and that the contact was hard enough that she felt it, but it did not leave a mark or bruise. Defendant characterizes the contact as a "tap on the chin made in jest" in response to her statement which he construed as a joke and "typical joking that goes on between coworkers." ECF No. 61 at 3. After the contact, Tofsrud was not visibly upset and approached Kennedy about speaking with the supervisor regarding permission to leave work early. There is no evidence that the Plaintiff complained to co-workers or supervisors of the alleged assault when it occurred. However, when subsequently being informed of Kennedy's conduct, the Postal Service suspended Kennedy for seven days for "unacceptable conduct." ECF No. 61 at 22. USPS policy prohibited employees from engaging in conduct that would contribute to an unpleasant working environment, harassment, intimidation, threats, or bullying. ECF No. 61

ORDER - 4

The evidence before the court suggests the alleged assault on October 22, 2008 was the result of a work-related discussion, at least partly motivated by an intention to serve the employer USPS to get Plaintiff to stay on task. Kennedy's gestures were apparently connected to the manner in which Plaintiff was performing or failing to perform her duties. There is no evidence his purpose was personal, or that he was acting with personal ill will. Plaintiff does not contend that Kennedy "hit" her a hard blow or that it was such as to stop her work. The alleged battery, although intentional and poor judgment which was inappropriate and childish was the result of a foreseeable interchange between co-employees. Plaintiff has provided no evidence to suggest the act was otherwise motivated. More importantly, the act was an outgrowth of the previous work-related exchange between the two employees, which was re-initiated by Plaintiff. The acts took place within the "time and space limits of the employment" -- during business hours, while the employees were at their work station and working side by side.

Plaintiff has failed to demonstrate that Kennedy's momentary deviation from attention to his work duties was so far outside the employer's business so as to take him outside the scope of his employment. *See e.g., Robel v. Roundup Corp., 148 Wash.2d 35, 54* (Wash. 2002)(finding Fred Meyer deli workers' torment of co-worker on company property during working hours while they performed the duties they were hired to perform within the scope of employment). Prior cases in the Ninth Circuit Court of Appeals have also concluded that inappropriate, but minor physical contact between two employees while performing their assigned duties does not warrant a finding that the contact was outside the scope of the offender's employment. *See Kolke v. U.S.*, 121 F.3d 715 (9th Cir. 1997)(**unpublished**)(apparently applying Washington law)(holding that the employee had no grounds to challenge the certification of the United States Attorney, when a co-worker shook plaintiff's shoulders in an apparent attempt to emphasize a matter of Navy business, where there was no allegation the shaking was violent, that any personal animus existed, nor there an intent to injure suggested); *see also Wilson v. Drake*, 87 F.3d 1073 (9th Cir. 1996)(applying California law)(holding that California's

ORDER - 5

broad definition of scope of employment encompassed the actions that the subordinate attributed to the supervisory employee. It was alleged that the supervisory employee used physical force to prevent the subordinate from tape recording a conversation, apparently about a doctor's recommendation that the subordinate receive reasonable accommodation for his carpal tunnel syndrome, and that the supervisory employee climbed upon the subordinate's torso, used his body to hold the subordinate down, and used his arms and hands in an attempt to prevent the subordinate from turning the tape recorder on. The court pointed out that under California law, an assault and battery committed by an employee is within the scope of employment, even if it violates an employer's direct orders, where such conduct results from a dispute arising out of employment); and *Ahmed v. U.S. Postal Service*, 230 F.3d 1366 (9th Cir. 2000) (**unpublished**)(apparently applying California law)(customer failed to offer any credible evidence that USPS employee acted outside the scope of employment when he thrust his finger into the customer's face and the Attorney General certified the act was within the scope of his employment).

   The matter *sub judice* is closer to the Illinois case of *Beno v. U.S.*, 1994 WL 457232 (N.D. Ill. 1994) (applying Illinois law)(**unpublished**)(evidence was insufficient to demonstrate USPS carrier acted outside the scope of his employment when, while on duty, he allegedly assaulted a postal customer by the forcible grabbing, pulling, and twisting of the plaintiff's arm or wrist), than the cases relied upon by the Plaintiff herein.

    The nature of the acts involved in this case, in comparison to those in the existing case law finding acts to be outside the scope of employment (e.g. sexual assault, rape, physical altercations, assault with a metal pipe), is a factor the court has considered. In analyzing whether the conduct at issue was "far beyond" or "too little actuated" by a purpose to serve the employer, the court notes how the acts occurring on October 22, 2008 are factually distinguishable from the more egregious behavior found to be outside the scope of employment in the existing case law. *See e.g.*, *Smith v. Sacred Heart Medical Center*, 144 Wash. App. 537, 184 P.3d 646 (Div. 3 2008) (sexual misconduct furthering the employee's "compulsion for personal sexual gratification"); *Thompson v.*

ORDER - 6

*Everett Clinic*, 71 Wash.App. 548 (1993)(actions of a doctor, who for his own personal sexual gratification, manually obtained sperm samples from his male patients during examination); *Niece v. Elmview Group Home*, 131 Wash. 2d 39, 929 P.2d 420 (1997) (employee of group home was outside scope of employment when he raped a disabled resident); *Kuehn v. White*, 24 Wash. App. 274, 600 P.2d 679 (1979)(truck driver's assault of another driver with a metal pipe). Kennedy's momentary deviation from attention to his work duties and inappropriate action was not so far outside the employer's business so as to take him outside the scope of his employment. While this rulings results in the preclusion of Plaintiff's assault and battery claim against any Defendant, a result this court might not prefer, it is mandated by Congress' enactment of the Westfall Act. Plaintiff has not rebutted the presumption created by the United States' certification. Accordingly, the court **DENIES** Plaintiff's Motion to Vacate the Order of Substitution.

**III.   45-DAY FILING REQUIREMENT**

At the end of Plaintiff's overlength memorandum in support of the Motion to Vacate, Plaintiff asks this court to reconsider the entirely separate issue of Title VII's limitation period which was previously decided and reconsidered in the court's August 23, 2010 and October 5, 2010 Orders. Defendants opposed Plaintiff's request on the merits and noted the memorandum was overlength. Plaintiff then filed a Motion for Permission to File Overlength Brief (**ECF No. 64**).

The court has considered Plaintiff's argument the USPS waived the 45-day reporting requirement, however, Plaintiff has not demonstrated that the court's prior decisions were clearly erroneous, and therefore the court denies the request to reconsider.

///
///
//
///
///
///

ORDER - 7

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Permission to File Over-length Brief is **GRANTED** (**ECF No. 64**). Plaintiff's Motion to Vacate the Order of Substitution (**ECF No. 54**) is **DENIED**.

The Clerk shall enter this Order and forward copies to counsel.

Dated this 7th day of December, 2010.

                        s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 8