UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDSEY R. TOFSRUD, a single person,<br><br>              Plaintiff,<br><br>   vs.<br><br>JOHN E. POTTER, as Postmaster General of the United States Postal Service, a federal governmental entity; and DAVID KENNEDY and JANE DOE KENNEDY, individually and as a marital community; and the UNITED STATE OF AMERICA;<br><br>              Defendants. | NO. CV-10-90-JLQ<br><br>**MEMORANDUM OPINION and ORDER GRANTING SUMMARY JUDGMENT MOTION** |

**BEFORE THE COURT** is Defendant United States' Motion for Summary Judgment (ECF. No. 66). For the reasons set forth below, the court grants Defendant's Motion.

**I.    BACKGROUND**

This matter is an employment discrimination case brought by a temporary postal worker against the Postmaster General.   Plaintiff asserts federal claims under 42 U.S.C. § 2000e et seq. (Title VII) for alleged gender discrimination.

Before setting forth the summary judgment facts, the court notes that Local Rule 56.1 requires a party opposing a motion for summary judgment to file a statement of facts which "must explicitly identify any fact(s) asserted by the moving party which the opposing party disputes or clarifies." LR 56.1(b). Under this rule, the court may assume the facts are admitted if not specifically controverted in this manner. Plaintiff did not

ORDER - 1

provide a controverting statement of facts to the Defendant's Statement of Facts in the manner prescribed in LR 56.1(b), but did so in her Surreply responding to the Defendant's *Reply* Statement of Facts.  The court has taken this into consideration in determining whether to consider a fact undisputed for purposes of Defendant's summary judgment motion. Of further concern is that Plaintiff only cited state of Washington law and cases in responding to the Defendant's motion.

Plaintiff Lindsey Tofsrud began working as a seasonal employee for the United States Postal Service (USPS) in December 2007.  She then continued working for the USPS as a causal (temporary) employee, assigned to work on an as-needed basis to sort mail at the Spokane Processing and Distribution Center (P&DC).  She resigned effective November 28, 2008.

David Kennedy worked at all times relevant to this case at the P&DC facility as a fulltime permanent employee Mail Processing Clerk and as needed, as a supervisor.  As a Mail Processing Clerk, he would sort outgoing and incoming mail, loading it into automated equipment, culling out non-processable items, and moving mail from bins into trays or other containers for further processing. Though Ms. Tofsrud had other supervisors, she was sometimes supervised by Mr. Kennedy.  Mr. Kennedy was also assigned duties as Safety Captain.  Mr. Kennedy did not have the authority to terminate employees.

Ms. Tofsrud alleges Mr. Kennedy harassed and discriminated against her by:  (1) referring to her as "girlfriend" ("How's my girlfriend?""Do I need to find a different girlfriend?""If you don't want to be my girlfriend, I can send you home and get a new one."); (2) refusing "to let her leave work unless she agreed to have drinks with him;" (3) telling her "that he could fire Plaintiff at his sole discretion whenever he wanted" because he was the Safety Captain; (4) telling her "that he would not give her a day off unless she dated him;"(5) "leering" at her while she was working; and (6) unnecessarily and "intentionally brush the front of his body against Plaintiff for up to five seconds." Ms. Tofsrud alleges Mr. Kennedy acted this way toward her "at least every week or every

ORDER - 2

1 other week".

2     Defendant and Mr. Kennedy deny any of these events occurred.  Mr. Kennedy
3 claims he never threatened to fire her, though as a Safety Captain he explained to all
4 employees that an employee could be fired for safety violations.  He also admitted during
5 a later USPS investigation that he told Ms. Tofsrud that the USPS "could fire you if you
6 do anything wrong because you don't have union protection."  Plaintiff further alleges
7 Mr. Kennedy harassed her when he asked her to fill out an uncommon form to document
8 absence from work.  Plaintiff alleges the form was not applicable to casual employees.
9 Defendant claims the form was required.  On another occasion, Plaintiff claims Mr.
10 Kennedy told her "you're fine" after a co-worker hostilely threw a bin at her.

11     On October 22, 2008, Ms. Tofsrud and Mr. Kennedy were working side by side at
12 a "flat sorter" performing their jobs.  Mr. Kennedy was not working in his supervisory
13 capacity.  During the shift, Ms. Tofsrud had asked Mr. Kennedy several times to leave
14 work early.  Mr. Kennedy admits that three times he made a gesture to Ms. Tofsrud
15 holding his fist up in the air next to his chest to show his displeasure because Ms. Tofsrud
16 was playing with her phone, and he was reminding her to get back to work.  Plaintiff
17 alleges he made the gesture "approximately 10 times" during the day, which Defendant
18 denies.  Plaintiff testified at her deposition that after the gesture Mr. Kennedy would then
19 "walk away laughing" (SOF 45), which is consistent with Mr. Kennedy's assertion that
20 the gesture was done "in jest".

21     Sometime during this October 22, 2008 shift, Mr. Kennedy made physical contact
22 with Ms. Tofsrud's chin.  Ms. Tofsrud used her cell phone device to record her
23 conversation with Mr. Kennedy at the precise time the contact occurred.  The recording
24 was transcribed as follows:

```
(garbled)...morning
L [Lindsey Tofsrud] - Yea, you act like you were gonna hit me like 10 times today
D [David Kennedy] - No-nine
L - Huh?
D - 9
L - 9 (?Pause) Whatever!
L - When you supervise...
D - that's a real hit, I didn't want [garbed] without hitting you.
```

ORDER - 3

```
    L - Oh now you actually hit me, thanx, when you supervise you let Dave throw
tubs at me and when you work with me you hit me.
    D - You said I did so I thought I'd make up for it.
    L - Yea thanks
```

ECF. 68, at 4-5 [Def. SOF 28].

Ms Tofsrud testified at her deposition that the contact was "probably" hard enough to knock over a glass of water. It did not leave a mark and she continued working. Mr. Kennedy claims the contact was made in jest in response to typical joking between co-workers. Later in the shift, Ms. Tofsrud asked to leave early and Mr. Kennedy told Ms. Tofsrud to "just suck it up" or words to that effect.

Plaintiff claims this October 22, 2008 contact caused her to feel intimidated by Kennedy. She claims she did not report the conduct because she was afraid of Mr. Kennedy and his ability to fire her. Mr. Kennedy testified that Plaintiff had no basis to fear Mr. Kennedy, that she was not actually intimidated or afraid, and that she joked and talked with Mr. Kennedy during work. Plaintiff did not complain to a supervisor or others of this contact or other alleged improper actions by Kennedy.

Ms. Tofsrud tendered her letter of resignation on November 7, 2008, effective November 28, 2008. Stacey Jasmer was the Senior Manager of Distribution Operations from July 21, 2008 through April 13, 2009. On November 13, 2008, Ms. Jasmer asked Ms. Tofsrud why she was quitting, but Ms. Tofsrud declined to give a reason. On November 25, 2008, Ms. Tofrud's final workday, Ms. Tofsrud spoke with Ms. Jasmer and disclosed that she was resigning because of alleged discrimination by Mr. Kennedy. Ms. Tofsrud told Ms. Jasmer that she delayed reporting Mr. Kennedy's actions because she was afraid he would fire her. Ms. Jasmer offered to assign Ms. Tofsrud to a different shift which would have reduced, but not eliminated, work with Kennedy. Ms. Jasmer also offered to move her to a different station, Automation, within the large PD&C facility (which is 318,000 square feet in size). Ms. Tofsrud was not satisfied with either option, as they would not have eliminated all potential contact with Mr. Kennedy. Though Ms. Tofsrud claims Ms. Jasmer "refused to transfer [Ms. Tofsrud] to another facility" (ECF. No. 85 [Pltf's SOF 72]), Ms. Tofsrud also told Ms. Jasmer "she did not

ORDER - 4

want to continue working for USPS after she reported Kennedy." *Id.*, [Pltf's SOF 61].

Ms. Jasmer promptly reported Ms. Tofsrud's complaints and set in motion the process to have Mr. Kennedy removed as a supervisor. Ms. Tofrud's last day of work was November 28, 2008. The USPS began a fact finding investigation on November 28, 2008 and Mr. Kennedy was removed as a supervisor. The USPS fact finding investigation concluded on or about December 9, 2008 and concluded there was no evidence of discrimination. In addition to being suspended from any supervisory duties, on December 30, 2008, Mr. Kennedy was suspended from his job with pay for "inappropriate conduct" for seven days because he had touched Ms. Tofsrud on October 22, 2008.

Plaintiff met with an EEO counselor on January 8, 2009. ECF. No. 22. As part of the EEO investigation, she was interviewed on February 2, 2009. She filed a formal EEOC complaint on March 26, 2009. *Id.*

Plaintiff subsequently commenced this lawsuit and in her First Amended Complaint filed May 26, 2010, alleged violations of Title VII (constructive discharge, harassment/hostile workplace, and retaliation) as well as common law claims for assault and battery. The United States Attorney certified that Defendant Kennedy was acting within the scope of his employment. This certification was unsuccessfully challenged by Plaintiff and the United States was substituted as the sole party Defendant on the common law claims. The common law claims were subsequently dismissed. The only remaining claims after prior dispositive rulings of the court (see ECF. Nos. 35, 45, and 65) are Plaintiff's Title VII Claims found in Counts 1, 2, and 3 of the First Amended Complaint against John E. Potter as Postmaster General of the United States Postal Service, for harassment, hostile work environment, constructive discharge, and retaliation.

## II. DISCUSSION

### A. Legal Standard

The court must grant summary judgment if the movant shows that there is no

ORDER - 5

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing all justifiable inferences in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

**B.    Exhaustion**

The issue of exhaustion was analyzed in the court's October 5, 2010 Order, which denied Defendant's motion to dismiss on exhaustion grounds because the record was insufficient to decide the issue.  (ECF No. 45). Defendant has now renewed the affirmative defense that Plaintiff failed to exhaust her administrative remedies with respect to her hostile work environment claim and retaliation claim.  Defendant alleges Plaintiff's retaliation claim was not raised at the administrative level, and that Plaintiff did not timely contact an EEO counselor in regards to her hostile work environment claim.

The jurisdictional scope of the plaintiff's court action depends on the content of the EEOC charge and investigation. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir.2003). "[T]he district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Id*. (citation omitted). The court must construe an EEOC charge with "the utmost liberality." *EEOC v. Farmer Bros., Co.*, 31 F.3d 891, 899 (9th Cir. 1994).

Plaintiff offers no argument in response to Defendant's claim that her cause of

ORDER - 6

action is barred for want of exhaustion. This omission concerns the court given the importance of the exhaustion requirement which allows the EEOC to serve its investigative and conciliatory role. However, all of Plaintiff's claims herein are closely related to and could reasonably be expected to grow out of the charge of discrimination that in fact were investigated by the EEOC concerning the conduct of Mr. Kennedy. The factual underpinnings of each claim are nearly identical. All three Title VII claims rely upon the alleged constructive discharge and discussion with Ms. Jasmer on November 25, 2008 which occurred within the 45-day window prior to Plaintiff first meeting with an EEOC counselor. For these reasons, the court declines to dismiss any of Plaintiff's claims for failure to sufficiently exhaust.

**C.     Harassment/Hostile Work Environment**

To establish a prima facie case of a hostile work environment, a [Title VII plaintiff] must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quotation marks omitted). "...[T]o find a violation of Title VII, 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *Id.* (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Establishing the third element of a Title VII claim includes both a subjective and objective component. The working environment must both be subjectively and objectively perceived as abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-21 (1993). The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court has identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job

ORDER - 7

performance. *Clark County School Dist. v. Breeden*, 532 U .S. 268, 270-71 (2001) (quotation marks omitted). The Ninth Circuit has applied these factors to delineate a minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. (citing *Faragher*, 524 U.S. at 788). "If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe." *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000).

In this case, the claim, viewed in the light most favorable to Plaintiff, alleges she was subjected to sexual harassment by her supervisor, Mr. Kennedy, through verbal abuse, intimidation, and then physical abuse. Plaintiff claims that over the course of Plaintiff's employment Mr. Kennedy would comment "Do I have to find a new girlfriend?; " refused "to let her leave work unless she agreed to have drinks with him."; told her "that he could fire her at his sole discretion whenever he wanted" because he was the Safety Captain (SOF 30); told her "that he would not giver her a day off unless she dated him;" leered at her while she was working (SOF 43); and brushed the front of his body against her for up to five seconds. When deposed Plaintiff could not provide any specific evidence as to the date, time or context in which these alleged events occurred. In some instances she claimed it was "multiple times" or "randomly", but most favorable to her is her assertion that unwelcome conduct occurred against her "at least every week or every other week" (SOF 35). Plaintiff also alleges Mr. Kennedy harassed her in singular events when he asked her to fill out an uncommon form to document absence from work. On another occasion, Plaintiff claims Mr. Kennedy harassed her when he told her "you're fine" after a co-worker threw a bin at her. Finally there are the October 22, 2008 gestures with his fist and then the contact with her chin, not a blow or striking, but in Plaintiff's own words, "sufficient to tip over a glass of water."

Plaintiff claims the above conduct was unwelcome, the first element of Plaintiff's

ORDER - 8

prima facie case, though she admits she never complained to management about Mr. Kennedy's conduct.  It is on the two remaining elements of Plaintiff's prima facie case that the evidence is deficient.  First, in Title VII cases, "conduct of a sexual nature" is something more like outright sexual harassment, consisting in actions related to sexual attraction, and derogatory, abusive language directed at women because they are women. *See, e.g., Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967-68 (9th Cir. 2002) (involving a plaintiff who was raped three times in one night by a business associate whose actions were essentially condoned by the employer); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1105-06 (9th Cir .1998) (involving an employee who made sexual remarks to a female co-worker over the loudspeakers at work and commented about her body to male co-workers); *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527-28 (9th Cir. 1995) (reversing a grant of summary judgment for the defendant city, finding that the behavior of plaintiff's ex-boyfriend repeatedly calling her house and hanging up, threatening to kill himself, running her off the road and getting her unlisted number-constituted an actionable claim under Title VII).

     With the exception of the alleged "girlfriend" comment, none of the conduct alleged facially indicates that Plaintiff's gender was the impetus for Mr. Kennedy's conduct.  Though Plaintiff may have subjectively believed herself to be a victim of harassment because of her gender, she has proffered no evidence that supports this assertion.  The gist of Mr. Kennedy's alleged conduct seems to have been the supervision of Plaintiff's work performance.  The courts do recognize that a Title VII *gender-based* hostile work environment action does not require that the harassing behavior be either of a sexual nature or motivated by sexual animus but can instead involve a <u>pattern of abuse</u> directed at women.  *E.E.O.C. v. Nat'l Educ. Ass'n, Ala.*, 422 F.3d 840, 845 (9th Cir. 2005).  The main inquiry in such a case is whether a defendant's treatment of women <u>differed sufficiently</u> in quality and quantity from the treatment of men.  *Id*.  Though Plaintiff seemingly is proceeding under this theory, she has provided no other evidence, other than her own self-serving affidavit, of sexual animus, i.e. that Plaintiff suffered

ORDER - 9

treatment different in quality from the treatment of men.  Plaintiff misstates her burden of proof on this element when in her Response she indicates that "there is no evidence that Kennedy treated men like he treated Plaintiff." ( ECF. No. 82 at 9). The *lack* of evidence does not suffice to meet Plaintiff's burden of showing that Plaintiff's treatment was different from the treatment of men.

Plaintiff's complaints do not resemble the "verbal or physical conduct of a sexual nature" within the meaning of a Title VII hostile work environment theory. However, assuming Plaintiff's evidence raised a sufficient question of whether the conduct was based upon gender within the meaning of Title VII, Plaintiff's claims fall short with regard to the third element, which as set forth above, has both a subjective and objective component.     Though Plaintiff has created a triable issue on whether the conduct was subjectively perceived by Plaintiff as abusive, Plaintiff lacks evidence necessary to clear the fairly high bar to demonstrate that the environment was one that a reasonable person would view Kennedy's conduct as sufficient to alter Plaintiff's terms and conditions of her employment.   Plaintiff's own actions in totally failing to report the alleged misconduct (despite opportunity to do so earlier) and her inability to describe with any precision the frequency of the alleged misconduct (describing in some instances it was "random" or "occasional") weaken any attempt by Plaintiff to argue that the conduct was severe enough to have permeated the workplace with discriminatory intimidation and insult. There is no evidence that the conduct unreasonably interfered with her work.  Plaintiff's evidence simply fails to take Mr. Kennedy's conduct to the required level above simple teasing, offhand comments, or isolated incidents severe enough to rise to a violation of Title VII.  *See e.g. Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992)(isolated incidents of sexual horseplay or inappropriate behavior over a period of years not so egregious as to render work environment hostile); *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858 (8th Cir. 2009)(employee's conduct of rubbing plaintiff's shoulders or back at times during her training session, calling plaintiff "baby doll" during a telephone conversation,

ORDER - 10

accusing her of not wanting to be "one of my girls", a one-time, long-distance suggestion that she should be in bed with him and a Mai Tai in Florida, and the insinuation that she could go farther in the company if she got along with him were not severe enough to have altered a term, condition, or privilege of her employment).

When compared with what the Ninth Circuit has found insufficiently severe or pervasive conduct, the alleged conduct of Mr. Kennedy, viewed in the light most favorable to the Plaintiff, does not constitute such conduct. For example, in *Kortan v. Ca. Youth Auth*, 217 F.3d 1104, 1110-12 (9th Cir. 2000), the Ninth Circuit found the plaintiff had not raised a triable issue with respect to hostile work environment where the superior referred to women as "castrating bitches," "Madonnas," or "Regina" in the plaintiff's presence on several occasions, and called plaintiff "Medea." The *Kortan* court contrasted the facts of the case with other cases showing the necessary type of behavior. *See Montero v. Agco Corp.*, 192 F.3d 856 (9th Cir. 1999) (finding a hostile environment where a supervisor made crude gestures, told plaintiff he had sexual dreams about her, and tried to put his head between her knees, and another employee made vulgar remarks and placed notes on plaintiff's desk telling her to take off all her clothes); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) (harassment was severe and pervasive where plaintiff endured eight years of sexually-harassing incidents, including being referred to by her supervisor as the office sex goddess, receiving vulgar notes, being patted on the buttocks, and finding a drawing of a pair of breasts labeled "Operation Cupcake" at a presentation she was to make); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998) (finding a hostile environment existed where supervisor made sexual remarks about plaintiff over two-year period, told her about his sexual fantasies, told other employees it would be fun to get into her pants, and used the loudspeaker to ask her whether she needed help changing clothes); *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir.1989), *overruled on other grounds, Burrell v. Star Nursery, Inc.*, 170 F.3d 951 (9th Cir.1999) (holding that repeated vulgarities, sexual remarks, and requests for sexual favors by a supervisory employee subjected employees to severe and pervasive sexual harassment

ORDER - 11

that seriously tainted the working environment).

A more recent example is found in Fourth Circuit case of *E.E.O.C. v. Central Wholesalers, Inc.*, 573 F.3d 167 (4th Cir. 2009), where the court concluded there was a triable fact as to whether gender-based harassment was objectively severe or pervasive when evidence showed that male coworker referred to women as bitches a number of times, whose cubicle had a Playboy calendar on his desk, kept Playboy magazines in his cubicle, hung a Playboy poster on his wall, watched pornography on his computer in plaintiff's presence, used a pornographic screensaver depicting partially naked women, and placed the screwdriver in the Halloween decoration in a sexual manner more than once.

As in the Ninth Circuit case of *Kortan*, *supra,* the conduct alleged by Plaintiff does not rise to the required order of magnitude. Title VII does not prohibit all verbal and physical harassment in the workplace.  Kennedy's alleged boorish, unmanly, unprofessional, and immature conduct, if proven, was decidedly and obviously inappropriate, but Title VII "is not a general civility code for the American workplace." *See Hervey v. County of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (internal marks omitted), *cert. denied*, 129 S.Ct. 1003, 173 (2009); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1000-02 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Faragher v. City of Boca Raton*, 524 U.S. 775(1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " (internal citation omitted)); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986) ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."). Plaintiff's allegation of conduct by Kennedy, not complained of during her employment, falls short of raising a triable issue  that she was subject to verbal or

physical conduct of a sexual nature that was sufficiently severe or pervasive to alter the conditions of her employment.   Plaintiff's hostile work environment/harassment claim must be dismissed.

Since the court finds that Plaintiff can not establish a prima face case, the court need not address the affirmative defense raised by Defendants based upon Plaintiff's failure to take advantage of reporting opportunities provided to her by the Defendant.

**C.     Constructive Discharge**

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent diligent, and reasonable employee to remain on the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). A prima facie case for constructive discharge requires "something more" than actionable discrimination. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004); *see also Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (stating that "[w]e set the bar high for a claim of constructive discharge"). Plaintiff must show "some aggravating factors, such as a continuous pattern of discriminatory treatment." *Schnidrig v. Columbia Mach., Inc*., 80 F.3d 1406, 1411 (9th Cir.1996).  To survive summary judgment, "a plaintiff must show there are triable issues of fact as to whether a reasonable person in his position would have felt he was forced to quit because of intolerable and discriminatory working conditions." *Hardage v. CBS Broad., Inc*., 427 F.3d 1177, 1184 (9th Cir. 2005), as amended by, 433 F.3d 672 (9th Cir. 2006); *see also Penn. State Police v. Suders*, 542 U.S. 129, 146, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) (plaintiff must show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response").

Plaintiff's constructive discharge claim arises out of the same fact pattern of alleged harassment that formed the basis of her hostile work environment claim. The court has held Plaintiff's evidence of a hostile work environment as defined by Title VII to be insufficient.  A claim for constructive discharge requires an even higher degree of proof.

ORDER - 13

Thus where a plaintiff "fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). Plaintiff's constructive discharge claim must be dismissed.

### D. Retaliation

"Title VII prohibits, among other things, retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding." *Nilsson*, 503 F.3d at 953 (citing 42 U.S.C. § 2000e-3(a)); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008) ("Employers may not retaliate against employees who have 'opposed any practice made an unlawful employment practice' by Title VII.") (quoting 42 U.S.C. § 2000e-3 (a)). To establish a prima facie case of discriminatory retaliation, Plaintiff must show that (1) she engaged in activity protected under Title VII, (2) her employer subjected her to an adverse employment action, and (3) the employer's action is causally linked to the protected activity. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). Typically, causation may be inferred if two circumstantial factors exist: temporal proximity between the protected activity and the alleged retaliatory decision, and the employer's knowledge of plaintiff's participation in that activity. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987), cert. denied, 498 U.S. 939, 111 S.Ct. 345, 112 L.Ed.2d 309 (1990). Plaintiff need not prove that the employment practice at issue was in fact unlawful under Title VII; it is sufficient that she had a "reasonable belief" that the employment practice she protested was prohibited under Title VII. *See Trent v. Valley Elec. Assoc., Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).

The factual basis of Plaintiff's retaliation claim was inadequately pled in both the EEOC process and in the First Amended Complaint. Plaintiff's claim is premised on the allegation that she reported the alleged discrimination to Ms. Jasmer on her last day of work on November 25, 2008 and thereafter the Defendant failed to either fire Mr. Kennedy or relocate Plaintiff to a different facility or assign her a schedule where she

ORDER - 14

would not have no possible contact with Mr. Kennedy. It is uncontroverted that Plaintiff's report to Ms. Jasmer constituted a protected activity under Title VII's retaliation provision. Plaintiff asserts the adverse employment action taken was her "forced resignation" or constructive discharge, which the court has herein held there is insufficient evidence to support. Plaintiff did not suffer an adverse employment action because she resigned on November 7, 2008, before she made any complaint and before Defendant made any employment decision in the wake of the complaint. Moreover, a refusal to grant a change requested by an employee is not an adverse employment action unless the employee has a right to the requested change by law or through the terms and conditions of his employment. *See Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997) (plaintiff showed that transfer was a common practice and so arguably a "privilege" of employment). There is no evidence that transferring work locations was a right or privilege of Plaintiff's temporary employment.

Even if Plaintiff's claimed constructive discharge was considered an adverse employment action, her retaliation claim would fail because she cannot establish a causal connection between her resignation and her subsequent protected activity of complaint. First, Plaintiff had already tendered her resignation by the time she lodged her complaint. Secondly, Ms. Jasmer's response upon hearing the complaint was to remove Mr. Kennedy as a supervisor and to offer to change Plaintiff's shift so she could work in a different department than Mr. Kennedy. No reasonable trier of fact could conclude, based on this evidence alone, that Plaintiff's resignation, or the failure to transfer her to a different facility, was the result of an effort to *retaliate* against her for lodging the complaint against Mr. Kennedy. Plaintiff's retaliation claim is factually insufficient.

### III. CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 66) is **GRANTED**. The Clerk of this court shall enter judgment of dismissal with prejudice of the First Amended Complaint and the claims therein.

**IT IS SO ORDERED**. The Clerk is directed to enter this order and judgment,

ORDER - 15

1  provide copies to counsel, and close the file.

2  DATED this 30th day of March, 2011.

3  s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
4  SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 16